IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAKE JENKINS<br>(TDCJ No. 2142692), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-1376-M-BN |
| | § | |
| LASALLE SOUTHWEST | § | |
| CORRECTIONS AND JOHNSON | § | |
| COUNTY, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jake Jenkins, now a Texas prisoner, filed this *pro se* action related to medical care that he received while detained pending trial in Johnson County at a facility operated by Defendant LaSalle Southwest Corrections ("LaSalle"). Chief Judge Barbara M. G. Lynn referred it to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Defendants LaSalle and Johnson County moved for dismissal and, alternatively, for summary judgment under, respectively, Federal Rules of Civil Procedure 12(b)(6) and 56. *See* Dkt. Nos. 27, 28, & 29. Plaintiff filed a response. *See* Dkt. Nos. 32 & 33. But no reply was filed, and the deadline to do so has passed.

The undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent explained below, the Court should deny the motion for summary judgment as to Defendants' affirmative defense that Plaintiff failed to exhaust administrative remedies under the Prison Litigation

Reform Act (the "PLRA"); grant the motion to dismiss; and, because Plaintiff has pleaded his best case, dismiss this action with prejudice.

## Applicable Background

Plaintiff is currently in the custody of the Texas Department of Criminal Justice ("TDCJ") under a June 2017 delivery-of-a-controlled-substance conviction in Johnson County. *See State v. Jenkins*, No. F50576 (18th Dist. Ct., Johnson Cty., Tex.). Through this civil rights action, he alleges deliberate indifference, citing the Eighth Amendment, based on the lack of medical care that he received as to his right eye while detained pretrial. *See* Dkt. No. 7 (verified responses to the screening questionnaire). He alleges that he received four examinations, from November 2016 through March 2017, and was twice recommended for eye surgery, but, on March 30, 2017, was "told that it's been [too] long, and [that he] wouldn't benefit from any surgery." *Id*. at 2, 4; *see also id*. at 5 ("Therefore, my minor eye issue became a major problem. If I were able to receive proper care following the eye evaluations, I would not be completely blind in my right eye.").

## Legal Standards and Analysis

I.    <u>Exhaustion</u>

The undersigned will proceed with the alternative summary judgment motion based on exhaustion first. *See Dillon v. Rogers*, 596 F.3d 260, 272, 273 (5th Cir. 2010) ("[E]xhaustion [under the PLRA] is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time" – thus, "[w]hen the defendant raises exhaustion as an affirmative defense, the judge

should usually resolve disputes concerning exhaustion prior to allowing the case to proceed to the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary. Then, if the judge determines that the plaintiff has exhausted administrative remedies or that his or her failure to exhaust should be excused, the case may proceed to the merits." (footnote omitted)).

### A.    Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). And a factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003).

Where, like here, the party moving for summary judgment "bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the

party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

Although Defendants have not filed an answer asserting as an affirmative defense Plaintiff's alleged failure to exhaust administrative remedies – and have instead raised that affirmative defense in their initial response to the complaint – "[a]n affirmative defense may be raised on a motion for summary judgment ... if that motion is the first pleading responsive to the substance of the allegations." *Kostic v. Texas A&M Univ. at Commerce*, 11 F. Supp. 3d 699, 711 (N.D. Tex. 2014) (quoting *United States v. Burzynski Cancer Research Inst.*, 819 F.2d 1301, 1307 (5th Cir. 1987)); *see also Funding Sys. Leasing Corp. v. Pugh*, 530 F.2d 91, 96 (5th Cir. 1976).

"[T]he the traditional leniency afforded to a pro se plaintiff does not excuse [him] from [his] burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")). And, "[a]lthough courts should advise *pro se* prisoners of procedural rules," *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Davis*, 798 F.3d at 293-94), the United States Court of Appeals for the Fifth Circuit "has held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing

-4-

affidavits as the notice given by Rule 56 and the local rules suffices," *id.* (citing *Martin v. Harrison Cty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)); *see, e.g.,* Dkt. No. 30 (order setting briefing schedule as to Defendants' motion, setting out the applicable summary-judgment standards and providing notice of the pertinent rules).

That said, the verified complaint and sworn interrogatory answers of a *pro se* litigant, *see* Dkt. Nos. 2 & 7, can be considered as summary-judgment evidence to the extent that such pleadings comport with the requirements of current Rule 56(c), *see King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."). Verified responses to interrogatories issued to "[t]o aid in the determination of whether an IFP complaint is frivolous" "become part of the plaintiff's pleadings," *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)), and can provide evidence that could defeat a motion for summary judgment, *see, e.g., Houda v. Jupiter Chevrolet*, No. 3:05-cv-1418-D, 2006 WL 3531286, at *7 (N.D. Tex. Dec. 7, 2006) ("In the instant case, Plaintiff's response to the Magistrate Judge's Questionnaire provides sufficient evidence to create a genuine issue of material fact of whether Plaintiff suffered race and age-based discrimination.").

Under the PLRA, "'[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Davis*, 798 F.3d at 294 (quoting 42 U.S.C. § 1997e(a)). Courts

interpret the term "with respect to prison conditions" broadly, and "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

But "exhaustion under the PLRA is not a pleading requirement that plaintiffs must satisfy at the outset of litigation." *Dillon*, 595 F.3d at 272 n.3 (citing *Jones v. Bock*, 549 U.S. 199, 211-12 (2007); *Johnson v. Johnson*, 385 F.3d 503, 516 n.7 (5th Cir. 2004)). And a court "can only dismiss for failure to state a claim based on a failure to exhaust when the face of the complaint makes clear that the plaintiff did not exhaust." *LaBeouf v. Manning*, 575 F. App'x 374, 378-79 (5th Cir. 2014) (citing *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); footnote omitted). Therefore, in almost every instance, "exhaustion under the PLRA is properly treated as an affirmative defense and analyzed as a motion for summary judgment," *Miller v. Fed. Bureau of Prisons*, 703 F. Supp. 2d 8, 15 (D.D.C. 2010) (citing *Jones*, 549 U.S. at 216); *accord LaBeouf*, 575 F. App'x at 379; *Burns v. East Baton Rouge Parish Prison Emergency Med. Servs.*, Civ. A. No. 14-0245-JWD-EWD, 2016 WL 1122242, at *2 (M.D. La. Mar. 4, 2016).

"[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust." *Jones*, 549 U.S. at 218 (internal quotation marks and

citations omitted); *see Moussazadeh v. Tex. Dep't of Crim. Justice*, 703 F.3d 781, 788 (5th Cir. 2012) ("In determining exhaustion under the PLRA, we look to the processes established by the prison and the parties' use of these processes."); *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam) ("Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." (citations omitted)); *Kidd v. Livingston*, 463 F. App'x 311, 313 (5th Cir. 2012) (per curiam) ("It is the prison's requirements, not the [PLRA], that define the requirements of exhaustion"); *see also Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) ("Nothing in the [PLRA] prescribes appropriate grievance procedures or enables judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems" (footnote omitted)).

"[M]ere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, [the Fifth Circuit has] required prisoners to exhaust available remedies properly." *Dillon*, 596 F.3d at 268.

Thus, "[i]nmates need not exhaust all administrative remedies" – "only those that are 'available' to them," and, "[w]henever defendants claim a failure to exhaust, they have the burden to prove that the plaintiff did not exhaust administrative remedies that were actually available to him." *Davis*, 798 F.3d at 294-95 (citations omitted); *see Cowart v. Ervin*, 837 F.3d 444, 451 (5th Cir. 2016) ("The PLRA requires prisoners to exhaust such administrative remedies as are available prior to filing a § 1983 action regarding prison conditions." (citations and internal quotation marks omitted)); *see also Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) ("[I]nterference with an

inmate's pursuit of relief" – such as, "through machination, misrepresentation, or intimidation" – "renders the administrative process unavailable." (collecting cases, including *Davis*, 798 F.3d at 295 ("Grievance procedures are unavailable ... if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process" (emphasis deleted in *Ross*))))

## B.    Analysis

In moving for summary judgment, Defendants offer three sworn declarations, from: Judith Bennett, the Assistant Warden for LaSalle at the Johnson County Correctional Center ("JCCC") [Dkt. No. 29 at 7-34]; Stacy King, the Assistant Warden for LaSalle at the Jack Harwell Detention Center ("JHDC") [*id.* at 35-45]; and Ron King, the Warden for LaSalle at the Parker County Jail [*id.* at 42-48]. As explained by Ms. Bennett,

> Jenkins was booked into the JCCC on February 6, 2016, after being arrested on February 4, 2016 for possession of a controlled substance and delivery of a controlled substance. Jenkins was indicted on June 2, 2016 and a criminal judgment was entered on June 22, 2017 where Jenkins was sentenced to six years in the Institutional Division of the [TDCJ]. Jenkins booked out of the JCCC on January 31, 2017 and was transferred to [JHDC] ... in Waco, Texas. He was detained [there] from January 31, 2017 until February 24, 2017, when he was transferred to the Parker County Jail. He was detained [there] until July 6, 2017, when he was transferred back to [JHDC]. On July 26, 2017, Jenkins was transferred to the custody of the [TDCJ]. Jenkins filed this lawsuit on May 23, 2017 while he was still detained at the Parker County Jail.

*Id.* at 7-8 (citations omitted).

LaSalle operates all three facilities at which Plaintiff was detained pretrial. *See*

*id.* at 7, 35, & 46. And all three facilities use the same two-step grievance procedure. *See id.* at 8-9, 36, & 47. That procedure is set out in an inmate handbook at each facility, and Plaintiff received the handbook at each jail. *See id.* at 8, 27, 36, 43, 44, & 46-47.

While at JCCC, Plaintiff filed four grievances: one concerning an officer placing a trash bag near his bunk, on March 27, 2016; a second requesting information on his court date, on April 5, 2016; a third complaining that his ear drops were confiscated during a shake down, on September 28, 2016; and a fourth complaining that he did not receive a wash cloth back from his laundry, on December 3, 2016. *See, e.g., id.* at 9. Plaintiff accepted the resolution of each. *See id.*

While at JHDC, Plaintiff grieved that he was not given another orange juice after his spilled during breakfast. *See id.* at 37.

And not until Plaintiff was at the Parker County Jail did he filed a grievance concerning the subject matter of this lawsuit. *See id.* at 47-52. On March 31, 2017, he filed a grievance alleging in substance the claims set out above. *Compare id.* at 51-52, *with* Dkt. No. 7. Warden King's

> response on April 3, 2017 notes that [Plaintiff] advised Jail staff at intake that he had right eye blindness due to cataracts. It also states that all Johnson County inmate medical care treatment is provided by Johnson County while he was housed in Parker County. The response notes that Jail staff contacted Johnson County medical department staff and forwarded this grievance to their medical department. [Plaintiff] filed no Step 2 appeal to this grievance within five (5) working days, or by April 10, 2017.

Dkt. No. 29 at 47-48 (citations omitted).

-9-

Plaintiff failed to submit competent evidence to rebut Defendants' summary-judgment evidence. *See* Dkt. Nos. 2, 7, 31, & 33; *see also, e.g., Smith v. Palafox*, ___ F. App'x ___, No. 17-50152, 2018 WL 1414552, at *3 (5th Cir. Mar. 21, 2018) (per curiam) ("To decide whether summary judgment is proper here, [a court] must, as a threshold matter, determine what evidence in the record is to be considered.' '[A]s a general matter, the competent evidence of the summary judgment nonmovant is to be accepted and credited.' But if 'the testimony that [the nonmovant] initially offer[s] in opposition to summary judgment [is] neither sworn nor declared under penalty of perjury to be true and correct, it [is] not competent evidence.'" (quoting *Davis*, 798 F.3d at 292; citation omitted)).

Even so, that Plaintiff failed to file a Step 2 grievance after receiving the April 3, 2017 response to his March 31, 2017 grievance – based on the substance of that response – does not carry Defendants' burden to "establish beyond peradventure" that Plaintiff failed to exhaust available administrative remedies. *Fontenot*, 780 F.2d at 1194. The applicable response is, simply put, not a denial of the grievance. And the substance of that response – that the Parker County Jail was forwarding Plaintiff's concerns to the party responsible for his medical care – would not necessarily dissatisfy him nor alert him that an appeal was necessary or justified. *See* Dkt. No. 29 at 20 (under "Step 2 Grievance," explaining that "[i]nmate/residents who are dissatisfied with a decision shall have 5 working days, after notice of the decision, to appeal to the Sheriff or designee" and that "[t]he justification for appeal must be identified on Step 2 of the appeal form"); *cf. Rogers v. Brown*, No. 3:12-cv-2458-M, 2014 WL 572384, at

-10-

*3 (N.D. Tex. Feb. 13, 2014) ("[A]n administrative procedure that cannot provide any relief or that lacks authority to take any action in response to a complaint does not provide an 'available remedy' for the purposes of PLRA exhaustion." (citing *Dillon*, 596 F.3d at 267)).

For these reasons, the alternative motion for summary judgment should be denied, and the Court should consider the motion to dismiss.

## II.   Deliberate Indifference

### A.   Legal Standards

In deciding a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, the plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States Supreme Court "has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*,

135 S. Ct. at 346.

That rationale has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *see United States v. Ayika*, 554 F. App'x 302, 308 (5th Cir. 2014) (per curiam) (a court has a "duty to construe *pro se* [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney"); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

Although the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims.

Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion," where, although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties," the Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Turnage v. McConnell Techs.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

**B.    Analysis**

"[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). Through the procedural and substantive due process guarantees of the Fourteenth Amendment, then, "the deliberate indifference standard

articulated ... in *Farmer v. Brennan*, 511 U.S. 825, 837-40 (1994), applies to pretrial detainees." *Thomas v. Mills*, 614 F. App'x 777, 778 (5th Cir. 2015) (per curiam) (citing *Hare*, 74 F.3d at 643).

To allege a constitutional violation under this standard – as it applies given the facts alleged here – Plaintiff must contend that jail officials acted with deliberate indifference such as to cause the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Delays in providing medical care do not rise to the level of a constitutional violation unless the delay results in substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). And an incorrect diagnosis, a disagreement with medical treatment, or a failure to provide additional medical treatment – alone – does not constitute deliberate indifference. *See Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *see also Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (to establish a deliberate-indifference violation, a plaintiff must show that medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs").

But, even if the facts Plaintiff has stated plausibly allege a claim that meets the deliberate-indifference standard, this claim fails as against the defendants Plaintiff has sued – a municipality and a private-prison corporation that should be considered a municipality for present purposes.

It is clearly established that "[a] municipality" – like Johnson County – "and/or its policymakers may be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted).

And, although LaSalle "is a private corporation, [it] may be sued under 42 U.S.C. § 1983 for alleged constitutional injury, because the operation of a prison is a fundamental government function." *Olivas v. Corrs. Corp. of Am.*, 408 F. Supp. 2d 251, 254 (N.D. Tex. 2006) (citing *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) ("We agree with the Sixth Circuit and with those district courts that have found that private prison-management corporations and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury.")), *aff'd*, 215 F. App'x 332 (5th Cir. 2007) (per curiam). "The standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function." *Id.* at 254-55 (citing *Eldridge v. CCA Dawson State Jail*, No.3:04-CV-1312-M, 2004 WL 1873035, at *2 (N.D. Tex. Aug. 19, 2004), *rec. accepted*, 2004 WL 2075423 (N.D. Tex. Sept. 16, 2004)); *see also Olivas*, 215 F. App'x at 333 ("Contrary to Olivas's argument, CCA may not be held liable on a theory of respondeat superior." (citing *Monell*, 436 U.S. at 691)); *J.M. v. Mgmt. & Training Corp.*, No. 3:15CV841-HSO-JCG, 2017 WL 3906774, at *7 (S.D. Miss. Sept. 5, 2017) ("The parties do not dispute that MTC, even though it is a

private prison-management company, is treated as a municipality for purposes of Plaintiff's § 1983 claims." (citations omitted)).

To assert liability under *Monell*, Plaintiff must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see also id.* ("A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" (quoting *Piotrowski*, 237 F.3d at 578)).

And, because Plaintiff fails to allege that his rights were violated under an official policy of either LaSalle or Johnson County, he has not alleged a plausible claim against the defendants or their policymakers.

The Court's screening question notified him of this pleading requirement. *See* Dkt. No. 6, Question No. 4 ("You have named Johnson County as a defendant. To establish the liability of a municipal entity, you must prove that action under official municipal policy caused your injury. Please state what official policy or custom you allege, if any, harmed you."). And Plaintiff responded that he was harmed when he "tried to seek medical attention," leading "to multiple evaluations, without any care administered." Dkt. No. 7 at 5.

While *Monell*'s "'official policy' requirement may be met in at least three different ways," *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999), and "establishing a municipal policy is usually done via 'written policy statements,

-17-

ordinances, or regulations,' this circuit also views municipality customs – 'widespread practice that is so common and well-settled' – as municipal policy," *Skyy v. City of Arlington*, 712 F. App'x 396, 399-400 (5th Cir. 2017) (per curiam) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); citing *Gates v. Tex. Dep't of Prot. & Regulatory Servs.*, 537 F.3d 404, 436 (5th Cir. 2008) ("A custom is shown by evidence of a persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy.")).

But all Plaintiff has claimed are violations of "official policy" are alleged constitutional violations isolated to him. "'Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability.' [And a] customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984); citation omitted). Accordingly, Defendants' motion to dismiss should be granted.

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.' ... Granting leave to amend, however, is not required if the plaintiff has already pleaded [his] 'best case.' A plaintiff has pleaded [his] best case after [he] is apprised of the insufficiency of [his] complaint[ – such as the facts, as alleged, are conclusory. And a] plaintiff may indicate [he] has not pleaded [his] best case by stating material facts that [he] would include in an amended complaint to overcome the deficiencies identified by the court." *Wiggins v. La. State Univ. – Health*

*Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009); citations and internal question marks omitted).

Because the Court's questionnaire apprised Plaintiff of the insufficiency of his claims against LaSalle and Johnson County, he has pleaded his best case, and this action should be dismissed with prejudice.

## Recommendation

The Court should deny Defendants LaSalle Southwest Corrections and Johnson County's motion for summary judgment as to their affirmative defense that Plaintiff Jake Jenkins failed to exhaust administrative remedies under the Prison Litigation Reform Act, but grant their motion to dismiss, and, because Plaintiff has pleaded his best case, dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: July 11, 2018

 

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE